### A. W. GOLDSMITH v. THE CITY OF CINCINNATI.

1. COURTS WILL CORRECT MUTUAL MISTAKES IN CONTRACTS WHERE SUCH ACTION DOES NOT AFFECT THIRD PARTIES.

While courts will correct errors, made by mutual mistakes, as between the parties to a contract, such correction cannot be allowed where it will in juriously affect the rights of other parties, which have subsequently accrued.

2. WHERE LIENS ARE RELEASED UPON AGREEMENT TO PAY A CERTAIN SUM, A MISTAKE IN THE AMOUNT WILL NOT DEFEAT CLAIM OF LIENHOLDER.

Under the rule above stated, upon the assignment of a contract for a street improvement, partly completed, the assignee agreed to pay to a trustee a certain sum for the work already performed, in consideration of which agreement liens were released, the assignee will be required to pay to the former lienholders the full amount of their liens, although it is discovered that the arbiter, selected to estimate the value of work done, made a material mistake.

APPEAL from the Court of Common Pleas of Hamilton county.

SMITH, J.

The material facts in this case as we understand them, briefly stated, are these: Neidermeyer entered into a contract with the city of Cincinnati for the improvement and construction of a street of the city; and Spooner & Humpreys were his sureties on such contract. Neidermeyer commenced and prosecuted said work for some time, but was unable from financial embarrassment to complete it, and the city was about to take steps to cancel the contract and re-let it, and look to Neidermeyer and his sureties for any damage that would result from his failure to complete it. This the sureties were anxious to avoid, and negotiated with Evan Evans to have him take an assignment of the contract and complete it—he to pay to the sureties the contract price of the work already done by Neidermeyer. This was verbally agreed to by them, and it was further agreed by them verbally that the amount of the work which had been done by Neidermeyer was to be completed and ascertained by Mr. Caldwell, a civil engineer, whose estimate was to be accepted by the parties as correct. It was accordingly measured and calculated by Caldwell, who made a report to the parties, and on September 13,

1892, a written contract was entered into between Spooner and Humpreys of the first part and Mr. Evans of the second part, which recited substantially that the parties of the first part were the owners, by assignment from Neidermeyer, of this contract between Neidermeyer and the city, and that a large amount of work had been done by Neidermeyer there'n, and that Caldwell had prepared an estimate of the value of the work done by him, amounting to $7,889.20, which estimate for the value of the work and materials put into it to that date is accepted as correct; and it was then and thereby agreed that "Spooner & Humpreys shall, and they hereby do, assign and set out to said Evans all their right, title and interest, and all the right, title and interest of Neidermeyer in and to said contracts, the same to be free from all liens and claims of every kind, except as to the value of the work done and materials furnished as measured and estimated as stated above by said William F. Caldwell, at $7,889.20, and in consideration of the premises, said Evans agrees to pay the amount of said estimate in the manner hereinafter set out." It then provides that upon the completion of the work and its acceptance by the city and the payment by the city of 90 per cent. of the amount due therefore, "said Evans shall pay the amount of the estimate of said work already done, amounting to $7,889.20, to A. M. Goldsmith, who is hereby made trustee of said fund for the holders of liens thereon, the balance, if any, of said fund to be paid by said trustee to Spooner & Humpreys, when said liens are satisfied." And it was further provided that all the balance due from the city on the contracts was to belong to Evans, free from all liens and claims of every kind, and the parties of the first part agreed to protect and save harmless said Evans from all claims against or on account of said work heretofore done or money heretofore furnished for prosecuting said improvements. Neidermeyer, by indorsement on the contract, consented thereto, and on this contract is the further indorsement, made at the time of its execution with the consent of the parties thereto, viz.: "It is a part of the written agreement that all the liens and claims for labor and materials shall be settled before any money is paid to the Equitable National Bank by me.

A. W. GOLDSMITH, Trustee."

On the same day, and to carry out this arrangement, with the knowledge of Evans, another written contract was entered into between the Equitable National Bank of the first part, and said Humprey, Spooner and others of the second part, which recited that whereas the said parties of the second part were sureties on notes given to the Equitable National Bank by Neidermeyer for $11,000, and that the bank was the holder by assignment from Neidermeyer of those contracts with the city, and whereas said contracts have been assigned by said Neidermeyer to Evans for the sum of $7,889.20, which it has been agreed shall be collected by Goldsmith, as trustee, and the proceeds to be applied to the payment of the debts of Neidermeyer, incurred in carrying out said contracts—it was then agreed that said debts should be paid in the following order. 1st. To the payment of debts for labor and materials furnished in carrying out said contracts, and the balance to be paid to the bank on said debt; and the bank thereupon released all liens or claims to any money and for any future work, and for all materials put in said work by said Evans. This,

too, was agreed and consented to by Neidermeyer, as shown by his indorsement on said contract.

It is admitted that Evans paid to Goldsmith, as trustee, a sufficient amount to pay all the liens on the work, except that due to the Equitable National Bank, and that this required all of said sum of $7,889.20, except about the sum of $2,500 with the interest thereon, and which he declines to pay, claiming that in his measurement and estimate of the amount of work done by Neidermeyer, Caldwell made a great mistake and gave him, Neidermeyer, credit for a much greater amount than had been done by him, and consequently that Evans is entitled to a credit on this balance, due from him to Goldsmith, in the amount of such mistake.

On the evidence submitted to us, we are of the opinion that there was a very material mistake made by Caldwell in his measurement of the work done on this contract by Neidermeyer, before it was assigned to Evans. His estimate of work so done in grad'ng and excavation was 32,088.67 cubic yards, while the estimate of the city, on the completion of the work by Evans, and after the latter had done a considerable amount of grading and excavation, was but 26,432 cubic yards—making a difference of 5,656.67 cubic yards. We are satisfied that this estimate of the city was correct, and that of Caldwell was erroneous, and therefore that it is satisfactorily shown that Caldwell gave Neidermeyer credit for at least 5,656.67 cubic yards of grading and excavation more than he was entitled to, and probably the error was greater than this in favor of Neidermeyer; but this is not shown with certainty. This over-estimate at 16 cents a cubic yard would amount to about $905.00.

This being so, if the controversy was solely between the parties to the first contract we have referred to, viz.: that between Spooner & Humpreys of the first part and Evans of the second part, we should feel bound under the law as we understand it, to hold that it having been entered into between these parties in good faith, but acting under a mutual mistake as to a material part thereof, that it should be corrected in that particular.

But in our judgment it does not follow as a consequence, that this contract can be corrected or reformed as against the Equitable National Bank or against Mr. Goldsmith, who was by the parties appointed and constituted as a trustee to receive and distribute this $7,889.20, in a particular manner. Neither the bank or Goldsmith or the other persons who were entitled to liens, or actually held such liens on the fund coming from the city, were parties to the contract which was predicated on this mistake. Certainly both the bank and Goldsmith, and probably the lienholders who have already been paid the full amount of their claims, knew of the contract and its terms. None of them knew of this mistake, and had no agency in bringing it about, and were in no sense responsible therefor. They simply knew that by the contract Evans, for a good and valuable consideration, had agreed to pay this amount to Goldsmith for them, on the condition that they would release to him their claims or liens on the amount that would be payable to them by the city when the contract should be completed, and on the faith of the promise and undertaking of Evans to make such payment to Goldsmith for them, they release all their liens against the fund, and in the case of the bank, it in effect assigns the contract which it held as collateral to its claims against

7 Dec. 46

Neidermeyer and his sureties, to Evans. Why should they be affected by a mistake in a contract of Evans with other persons to which they were not parties? Suppose those persons who held the liens should, on the faith of Evans undertaking to pay their claims, have cancelled them, and it had turned out that the mistake of Caldwell was such that no money whatever was really due to Neidermeyer for work done—could Evans be released from all liability to pay any part of the sum which he had stipulated to pay? Or, if it had been paid, could he recover it back from them? We think not. We know of no law which would sanction this—and we think the bank stands on the same ground. On the faith of this undertaking of Evans to pay the balance of the stipulated sum, after paying other liens, on the claim of the bank, it transfers to Evans or to the sureties who do so, the contract which had been assigned to it. If Evans had not agreed to pay this, the bank might well have held on to its contract, —and perhaps have realized more than it will now. Whether, if Evans is compelled to fulfill his contract and pay the full amount to Goldsmith, trustee, that he agreed to pay, he would have any recourse against Spooner or Humpreys with whom his contract was made, is not involved in this case, and we have not considered it, and express no opinion upon it.

*Harmon, Colston, Goldsmith & Hoadly*, for Plaintiff.

*Frank M. Coppock*, for Defendant.